**Vacated and Dismissed in Part, Affirmed in Part, and Memorandum Opinion filed May 17, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00149-CV

---

### GLEN SUMNER, Appellant

### V.

### BOARD OF ADJUSTMENT OF CITY OF SPRING VALLEY VILLAGE, TEXAS, THE CITY OF SPRING VALLEY VILLAGE TEXAS, AND ART FLORES, Appellees

---

### On Appeal from the 164th District Court
### Harris County, Texas
### Trial Court Cause No. 2013-30178A

---

## M E M O R A N D U M   O P I N I O N

In this case arising from a neighborhood drainage dispute, appellant Glen Sumner appeals from the trial court's order (1) dismissing all claims against appellee Art Flores, the building official for appellee, the City of Spring Valley Village, Texas; (2) dismissing Sumner's petition for writ of certiorari; and (3)

granting the motion for summary judgment filed by appellees, the City of Spring Valley Village, its Board of Adjustment, and Flores. In his first issue, Sumner argues that the trial court abused its discretion when it severed his claims against Flores and Spring Valley from his causes of action against his neighbor, Rickie Prichard. We overrule this issue because Sumner's claims against Flores and Spring Valley could have been asserted as an independent lawsuit and they are not so interwoven with Sumner's claims against Prichard that they involve identical facts and issues. In his second, third, and seventh issues, Sumner makes several arguments challenging the trial court's dismissal of his petition for writ of certiorari. We overrule these issues because Sumner failed to exhaust administrative remedies before filing his petition for writ of certiorari, and therefore the trial court never acquired subject-matter jurisdiction over the petition.

Sumner contends in his fourth issue, and parts of his fifth and sixth issues, that the trial court erred when it granted appellees' motion for summary judgment on his takings claim. We lack jurisdiction over Sumner's takings claim because exclusive jurisdiction has been statutorily assigned to the Harris County Courts at Law. In the remainder of his fifth and sixth issues, Sumner contends the trial court erred when it granted appellees' motion for summary judgment on his ultra vires and declaratory judgment causes of action. We overrule these issues because (1) Sumner failed to allege proper ultra vires claims and therefore governmental immunity applies; and (2) his cause of action seeking a declaration mandating that Flores take specified actions in the future is not ripe. Having overruled each of Sumner's issues, we vacate the trial court's order denying appellees' plea to the jurisdiction as moot and the portions of its summary judgment addressing Sumner's takings claim and ultra vires claim regarding Flores's future actions, and we render judgment dismissing those claims for lack of subject-matter jurisdiction.

2

We affirm the remainder of the trial court's judgment.

## BACKGROUND

### A.     The drainage dispute

Spring Valley Village adopted a zoning ordinance in 1981.   While periodically modified by Spring Valley, that ordinance has remained in effect during all times relevant to this appeal.  Spring Valley, as it was authorized to do under the Local Government Code, established a Board of Adjustment of the City of Spring Valley Village to handle any disputes or other issues that arose under the zoning ordinance.  *See* Tex. Loc. Gov't Code Ann. § 211.008 (West 2008).  Spring Valley's zoning ordinance addresses drainage.   Section 13.01 of the zoning ordinance provides:  "<u>PROPERTY OWNER'S RESPONSIBILITY:</u> It shall be the responsibility of each owner . . . to maintain the drainage patterns of adjacent property owners or landowners caused either by direct diversion of water on the land or by failure to adequately accommodate new or changed drainage patterns as they develop . . . ."  Spring Valley Village, Tex., Code of Ordinances, ch. 12, § 13.01.

Sumner has owned a home in Spring Valley since 1983.  Clara Kessler formerly owned the home adjacent to Sumner's.  Both homes' rear boundaries are formed by Spring Branch Creek.  Sumner alleged that his property had a higher elevation than Kessler's and as a result, water from his property drained onto Kessler's and from there into Spring Branch Creek.  Sumner also alleged that Kessler's property experienced erosion along Spring Branch Creek while his property did not.  At a point in time before 2005, Kessler hired a landscaper to perform work on her property.  According to Sumner, the ensuing work raised the elevation of Kessler's property and diverted the flow of surface water onto his property.  In response to Sumner's complaints, Kessler installed a perforated drain

3

pipe near the boundary between the two lots. According to Sumner, Kessler's drain pipe took run-off water from both properties and drained it into Spring Branch Creek.

Rickie Prichard bought the Kessler property in 2011 with the intention of building a new home on the property. According to Sumner, Prichard's construction plans called for the elevation of her property to change the direction of drainage away from Spring Branch Creek and toward the street. Sumner also alleged that Prichard's plans called for the construction of a new cinder-block fence between the two properties. Sumner additionally alleged that Prichard's plans called for the removal of the drain pipe installed by Kessler and the installation of a new drain pipe flowing to the street. According to Sumner, the new drain pipe would not drain his property as the Kessler drain pipe had because it would be elevated approximately one foot above the level of his property. Sumner believed that Prichard's plans would change the natural flow of surface water onto his property in violation of section 13.01 of the Spring Valley drainage ordinance as well as section 11.086 of the Texas Water Code. *See* Tex. Water Code Ann. § 11.086(a) (West 2008) ("No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded."). Finally, Sumner alleged that Prichard's plans to change the drainage pattern on her property were made at the insistence of Flores and Spring Valley. Despite these alleged problems, Flores issued a permit for the installation of an irrigation system, including a catch-basin (drain) on Prichard's property.

## B.    Sumner's protest to the Spring Valley Board of Adjustment

Sumner filed an application with the Spring Valley Board of Adjustment

4

protesting Flores's decision to issue a permit for Prichard's irrigation system and drain. Sumner asserted that the new drainage plan would alter the flow of water on his property.

The Board of Adjustment set a hearing on Sumner's protest and sent Sumner notice of the date and time of the hearing. The notice included a form letter addressed to "Applicants For a Hearing Before the Board of Adjustment." The letter included the following paragraph:

> As an Applicant for a hearing before the Board of Adjustment, you should read the City's Zoning Ordinance. There is no substitute for understanding the Ordinance and having a full appreciation for the regulations before you appear before the Board of Adjustment to request a variance or to pursue an authorized appeal. This letter is only intended to be a summary and a guide in helping you understand your responsibility and the role of the Board of Adjustment.

The letter advised that Board of Adjustment hearings "are conducted informally and the rules of evidence and procedure are not followed, without advance notice otherwise." The letter also informed applicants that they would be allowed to make a reasonable presentation and to submit whatever information they wished to be considered by the Board of Adjustment. Finally, applicants were advised they had to file "any letters, petitions, or other documents pertaining to a hearing" with the Spring Valley City Secretary who would deliver them to the Board of Adjustment.

The Board of Adjustment also has written rules of procedure. Article IV, section 6 of these rules provides that members of the Board of Adjustment may pose questions to each witness. It further provides that other persons must submit any questions to be asked witnesses to the presiding officer of the Board. Finally, section 6 provides that direct cross-questioning by a party may be allowed if requested by written motion and supported by good cause and true need.

5

The Board of Adjustment held the hearing on Sumner's protest of the irrigation and drainage permit on May 9, 2013. Both Sumner and Flores made presentations to the board during the hearing. Sumner was not, however, allowed to cross-examine Flores. The Board unanimously rejected Sumner's protest. Seven days later, Flores issued a certificate of occupancy for Prichard's new home construction. Sumner did not file a protest of this decision on the certificate of occupancy with the Board of Adjustment.

## C.     Sumner's lawsuit and the trial court's ruling

Sumner filed suit in Harris County district court against appellees and Prichard, alleging numerous causes of action. In his live (third amended) petition, Sumner included a petition for writ of certiorari appealing the Board of Adjustment's decision. Sumner's specific complaints, however, were directed at Flores's decision to issue a certificate of occupancy for Prichard's new home.[1] The trial court did not grant Sumner's petition for writ of certiorari.

Sumner also asserted a takings claim against the Board of Adjustment under Article 1, sections 17 and 19 of the Texas Constitution. In addition, Sumner alleged that the Board of Adjustment violated his right to due process during the protest hearing because it did not allow him to cross-examine Flores during the hearing or give him adequate notice of the Board's procedural rules. Sumner also alleged that the Board of Adjustment and Flores acted in concert with Prichard in her violation of section 11.086(a) of the Texas Water Code. Finally, Sumner sought a declaration that: (1) Prichard must submit a plan to Flores to remedy the

---

[1] For example, Sumner alleged that Spring Valley ordinances "require [Flores] to determine whether the property complies with all provisions of the Zoning Ordinance before issuing a certificate of occupancy and compliance." Sumner further alleged that Flores and the Board of Adjustment "had constructive knowledge of the Water Code § 11.086 and acted in concert with Prichard in her violation of Water Code § 11.086(a) by their decision to issue a certificate of occupancy and compliance."

6

alleged violations created by her construction plans and that Flores must notify Sumner when the plan was submitted; (2) appellees were acting in concert with Prichard in her continuing violation of section 11.086(a) of the Texas Water Code; (3) appellees had violated Sumner's right to due course of law under Article 1, section 19 of the Texas Constitution and he had been damaged as a result; and (4) Flores had discriminated against him as a class of one.

Appellees eventually filed several motions challenging Sumner's claims. Spring Valley and Flores filed a motion to dismiss Flores as a defendant. They asserted that all of Sumner's claims against Flores were based on conduct within Flores's scope of employment with Spring Valley, and therefore the claims were actually against his employer, Spring Valley. They then argued that under these circumstances, section 101.106(f) of the Texas Civil Practice & Remedies Code required the claims against the employee to be dismissed.

The Board of Adjustment filed a motion to dismiss Sumner's petition for writ of certiorari and declaratory judgment. Here, the Board argued that Sumner's petition for writ of certiorari should be dismissed (1) for want of prosecution; (2) for failure to exhaust his administrative remedies; and (3) because he cannot show that the Board made an illegal decision on Sumner's appeal of the drainage permit. The Board also argued that Sumner's declaratory judgment causes of action should be dismissed because a petition for writ of certiorari is the only method to challenge a board of adjustment's decision, and therefore the trial court lacked subject matter jurisdiction to issue a declaratory judgment on that issue.

All three appellees also filed a motion for summary judgment challenging Sumner's causes of action. In their motion for summary judgment, appellees asserted that (1) governmental immunity barred Sumner's claims against them; (2) Sumner's takings claim under the Texas Constitution fails because he does not

possess a property interest in the application of Spring Valley's building ordinances to Prichard's property; (3) Sumner was not denied due process and due course of law under the Texas Constitution; (4) the only remedy to challenge a decision of the Board of Adjustment is through a petition for writ of certiorari and therefore the trial court lacked subject matter jurisdiction over Sumner's declaratory judgment causes of action challenging that decision; and (5) the Texas Constitution provides no implied right of action for damages.

Finally, appellees filed a plea to the jurisdiction challenging the trial court's subject-matter jurisdiction to hear Sumner's takings claims. In this motion, appellees argued that the Harris County civil courts at law have exclusive jurisdiction over eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy.

Following a brief hearing, the trial court signed a single order dismissing all claims against Flores; dismissing Sumner's petition for writ of certiorari; and granting the motion for summary judgment. The trial court then denied the plea to the jurisdiction as moot. Appellees filed a motion to sever Sumner's claims against them from his remaining claims against Prichard. The trial court granted the severance, making its order final. This appeal followed.

## ANALYSIS

### I.   The trial court did not abuse its discretion when it granted appellees' motion to sever.

Sumner asserts in his first issue that the trial court abused its discretion when it severed his claims against appellees from his claims against his neighbor, Prichard. Sumner argues that the severance was an abuse of discretion because (1) it split into two parts a single claim that the Board and Flores acted in concert with Prichard to violate the Water Code and his rights under Article I, section 19 of the

8

Texas Constitution; (2) the severed claims would not be the proper subject of an independent lawsuit; (3) the severed claims involve the same facts and issues as the remaining claims; and (4) his alleged injury is indivisible.

Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Christopher Columbus St. Mkt., L.L.C. v. Zoning Bd. of Adjustments of the City of Galveston*, 302 S.W.3d 408, 414 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve identical facts and issues. *Christopher Columbus St. Mkt., L.L.C.*, 302 S.W.3d at 414. The controlling reasons for granting a severance are to do justice, avoid prejudice, and further convenience. *Id.*

We conclude that the trial court did not abuse its discretion in granting the severance. Despite Sumner's argument to the contrary, the case at bar involved multiple causes of action against multiple parties. In addition, the severed claims could be the subject of independent lawsuits. *See id.* at 414–15 (stating that constitutional claims and a petition for writ of certiorari could be asserted as independent causes of action). Finally, although Sumner's claims against appellees share some facts and issues with Sumner's claims against Prichard, and Sumner alleged that he suffered an indivisible injury, Sumner's claims against appellees had all been resolved by the trial court's grant of appellees' motions to dismiss and motion for summary judgment—decisions we affirm below. It was not an abuse of discretion for the trial court to sever those claims and make the interlocutory orders final and appealable. *See Cherokee Water Co. v. Forderhause*,

9

641 S.W.2d 522, 526 (Tex. 1982) (holding trial court did not abuse its discretion by severing defendant's counterclaim after summary judgment was granted on plaintiff's claim); *Dorsey v. Raval*, 480 S.W.3d 10, 15 (Tex. App.—Corpus Christi 2015, no pet.) (holding trial court did not abuse its discretion by severing claims against doctor resolved through partial summary judgment even though all causes of action, severed and un-severed, were based on same alleged act of negligence); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied) ("If summary judgment in favor of one defendant is proper in a case with multiple defendants, severance of that claim is proper so it can be appealed."); *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 142 (Tex. App.—Houston [14th Dist.] 1993, writ denied). We overrule Sumner's first issue.

## II. The trial court did not abuse its discretion when it dismissed Sumner's petition for writ of certiorari.

In his second and third issues, Sumner argues that the trial court abused its discretion when it dismissed his petition for writ of certiorari. Sumner asserts in his seventh issue that he did not receive the necessary elements of due course of law during his hearing before the Board of Adjustment. We address these issues together.

### A. Standard of review and applicable law

Municipalities such as Spring Valley are authorized to promulgate zoning regulations and to establish boards of adjustment to hear and decide appeals from determinations made by an administrative official in the enforcement of zoning regulations. *Lazarides v. Farris*, 367 S.W.3d 788, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing Tex. Loc. Gov't Code Ann. §§ 211.003, 211.008, 211.009(a)(1) (West 2008)). Any person aggrieved by the decision of an administrative official may appeal that decision to the municipality's board of

10

adjustment. *Id.* (citing Tex. Loc. Gov't Code Ann. § 211.010(a)(1)). If dissatisfied with the board of adjustment's decision, a person may appeal the decision by filing, within ten days of the board's decision, a petition for writ of certiorari in a district court, county court, or county court at law alleging that the board of adjustment's decision is illegal in whole or in part. *Id.* (citing Tex. Loc. Gov't Code Ann. § 211.011(a)(1)).

A writ of certiorari is the method by which a trial court reviews a decision made by a board of adjustment. *Board of Adjustment of the City of Piney Point Village v. Solar*, 171 S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). If the trial court grants the writ of certiorari, the board of adjustment must submit to the trial court the record of its challenged decision, which is called the "return." *Id.* The return "must concisely state any pertinent and material facts that show the grounds of the decision under appeal." *Id.* (quoting Tex. Loc. Gov't Code Ann. § 211.011(d)). Once the return is filed, the trial court reviews it and, if necessary, it may receive additional evidence before determining whether the board of adjustment's decision was illegal. *Id.* (citing Tex. Loc. Gov't Code Ann. § 211.011). We apply a presumption in favor of the board of adjustment's order, and the party attacking it has the burden of establishing that the board clearly abused its discretion. *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *Tellez v. City of Socorro*, 296 S.W.3d 645, 649 (Tex. App.—El Paso 2009, pet. denied). To establish an abuse of discretion, the contesting party must demonstrate that the board acted arbitrarily and unreasonably, without reference to any guiding rules or principles. *Vanesko*, 189 S.W.3d at 771.

Administrative remedies available under Chapter 211 of the Texas Local Government Code, such as an appeal to the Board of Adjustment, generally must be exhausted before decisions by administrative officials may be brought before

11

the courts. *Lazarides*, 367 S.W.3d at 798. Failure to comply with this requirement deprives a court of subject-matter jurisdiction to decide the case. *Id.*

**B.** **Sumner failed to exhaust administrative remedies regarding his challenge to the certificate of occupancy and failed to prosecute diligently his challenge to the irrigation and drainage permit.**

The trial court dismissed Sumner's petition for writ of certiorari without specifying the grounds for its action. Appellees argued that the petition should be dismissed because (1) Sumner's petition challenged Flores's decision to issue a certificate of occupancy to Prichard; (2) Sumner did not appeal that administrative decision to the Board of Adjustment; and (3) as a result, Sumner failed to exhaust his administrative remedies on that complaint, thereby depriving the trial court of jurisdiction. Having examined Sumner's third amended petition, we agree. Because Sumner did not exhaust his administrative remedies on his complaint regarding Flores's decision to issue a certificate of occupancy, the trial court did not have subject-matter jurisdiction and its only recourse was to dismiss the petition for writ of certiorari. *Clint Independent School District v. Marquez*, No. 14-0903, 2016 WL 1268000, at *2 (Tex. April 1, 2016) ("If the party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case."); *Sumner v. Bd. of Adjustments of the City of Spring Valley Village*, No. 01-14-00888-CV, 2015 WL 6163066, at *10 (Tex. App.— Houston [1st Dist.] Oct. 20, 2015, pet. denied) (mem. op.) ("Because the Board made no 'decision' regarding whether Flores properly issued the certificate [of occupancy], that question was not properly before the trial court, and we do not have jurisdiction over it on appeal.").

To the extent Sumner's petition for writ of certiorari could be construed as seeking review of the Board of Adjustment's rejection of his protest of Flores's decision approving the installation of an irrigation system and drain on Prichard's

12

property, we next consider whether appellees' motion to dismiss Sumner's petition for want of prosecution supports the trial court's dismissal.

A trial court's power to dismiss a case for want of prosecution stems from two sources: (1) Texas Rule of Civil Procedure 165a; and (2) the trial court's inherent authority to manage its own docket. *Gant v. Getz*, No. 14-10-00003-CV, 2011 WL 1849085, at *4 (Tex. App.—Houston [14th Dist.] May 12, 2011, no pet.) (mem. op.). If the trial court order dismissing a case does not specify a particular reason for the dismissal, we will affirm if any proper grounds support the dismissal. *Id.* Because we conclude that the trial court's inherent authority to manage its own docket is dispositive, we examine only that basis for dismissal. *Id.*

When deciding whether to dismiss a case under its inherent power, a trial court may consider the entire history of the case, including the amount of activity in the case, the length of time the case has been on file, whether a trial setting was requested, and the existence of reasonable excuses for the delay. *Bilnoski v. Pizza Inn, Inc.*, 858 S.W.2d 55, 58 (Tex. App.—Houston [14th Dist.] 1993, no writ). We review the entire record and reverse a dismissal order only if the trial court clearly abused its discretion. *Id.* The central issue is whether Sumner exercised due diligence in prosecuting his case. *Id.*

Sumner filed his original petition for writ of certiorari on May 20, 2013. The trial court dismissed his case on August 29, 2014. Between those dates, the appellate record indicates that Sumner filed three amended petitions: the first on February 28, 2014, the second on May 19, 2014, and the third on August 22, 2014. Although Sumner included a petition for writ of certiorari in each of his petitions, he conceded in his response to the motion to dismiss that he had not brought this request to the trial court's attention and had not asked for a decision. Thus, the court was not required to consider it. *See Zahorik v. Metropolitan Life Ins. Co.*,

13

No. 14-14-00564-CV, 2015 WL 4051972, *6 (Tex. App.—Houston [14th Dist.] July 2, 2015, no pet.) ("A trial court is not required to consider a motion that is not brought to its attention."); *Solar*, 171 S.W.3d at 254 (stating that trial court has discretion whether to grant aggrieved party's petition for writ of certiorari); *Hagood v. City of Houston Zoning Bd. of Adjustment*, 982 S.W.2d 17, 18 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (stating that decision to grant a petition for writ certiorari is discretionary).

It is undisputed that a writ of certiorari was never issued and never served on the Board of Adjustment, and that the Board of Adjustment did not submit a return to the trial court. Although the absence of a return is not fatal to a party contesting a board of adjustment's decision, there is nothing in the record indicating that Sumner took any steps to obtain other evidence to meet his burden to establish that the Board of Adjustment acted illegally when it rejected his protest. *See Tellez*, 296 S.W.3d at 650 ("Because the writ of certiorari was not requested or issued, Tellez had the burden of providing a sufficient record at the hearing to determine the illegality of the Board of Adjustment's decision.").

Further, Sumner offered no reasonable explanation for the delay. Instead, in his response to the motion to dismiss, Sumner admitted his lack of understanding of the procedure involved and any steps that might be required to bring his case to a conclusion on the merits. *See In re N.E.B.*, 251 S.W.3d 211, 211–12 (Tex. App.—Dallas 2008, no pet.) ("[W]e hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure."). We conclude Sumner has not shown that the trial court abused its discretion when it dismissed his petition for writ of certiorari for want of prosecution. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, No. 14-93-00323-CV, 1994 WL 276875, at *4–5 (Tex. App.—Houston [14th Dist.] June 23,

14

1994, writ denied) (not designated for publication) (rejecting plaintiff's contention that her delay in prosecution was reasonable because she was waiting for trial court to set her case for trial).[2]

## III. The trial court did not have subject-matter jurisdiction over Sumner's takings claim.

In his third amended petition, Sumner alleged that Flores's decision to issue a certificate of occupancy for Prichard's newly-built home damaged his property and therefore constituted a taking of his property by Spring Valley in violation of Article 1, § 17 of the Texas Constitution.[3] Appellees challenged Sumner's takings claim through their motion for summary judgment and plea to the jurisdiction. The plea to the jurisdiction asserted that the trial court did not have subject-matter jurisdiction over Sumner's takings claim because the Legislature has assigned exclusive jurisdiction over takings claims to the Harris County Courts at Law. The trial court granted the motion for summary judgment and then denied the plea to

[2] In his seventh issue, Sumner challenges the trial court's order granting appellees' motion for summary judgment on his claims that he was denied due process and the necessary elements of due course of law in his hearing before the Board of Adjustment. Each of these complaints is properly considered a part of his petition for writ of certiorari appealing the Board's decision. *See Edwards v. City of Tomball*, 343 S.W.3d 213, 222–23 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (holding appellant was required to challenge alleged procedural deficiencies in administrative imposition of civil penalty against her for running red light through appellate procedure created for that purpose rather than by filing declaratory judgment action). Because we have affirmed the trial court's dismissal of Sumner's petition for writ of certiorari, we need not reach his seventh issue.

[3] Sumner also alleged that appellees violated his right to due process and due course of law under Article 1, § 19 of the Texas Constitution, which enabled the allegedly unconstitutional taking of his property. Because this is an argument supporting Sumner's takings claim, we address it here. To the extent Sumner seeks a declaration that appellees violated due process and due course of law, that argument fails for the reasons discussed in footnote 2 above. To the extent Sumner alleges that a violation of his right to due process and due course of law under the Texas Constitution is an independent basis for an award of damages, we conclude we do not have subject-matter jurisdiction. *See Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting that the due process provisions of the Texas Constitution do not imply a cause of action for damages and a claim seeking monetary damages on that basis does not invoke a trial court's jurisdiction).

15

the jurisdiction as moot. Sumner challenges the trial court's actions in his fourth issue and parts of his fifth and sixth issues.

Subject-matter jurisdiction is the essential authority of a court to decide a case. *Texas Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 891 (Tex. App.—Austin 2014, no pet.) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). Subject-matter jurisdiction is never presumed, cannot be waived, and may be raised for the first time on appeal. *Id.* Indeed, a court is obligated to ascertain whether subject-matter jurisdiction exists regardless of whether the parties question it. *King v. Deutsche Bank Nat'l Trust Co.*, 472 S.W.3d 848, 851 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't. of Transp. v. Olivares*, 316 S.W.3d 89, 95 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Sumner asserts a claim for inverse condemnation. *See Westgate Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) (stating that an inverse condemnation or 'taking' action is available to compensate a property owner for a loss resulting when his property has been taken or damaged for public use without compensation or a condemnation proceeding); *Cascott, L.L.C. v. City of Arlington*, 278 S.W.3d 523, 528 (Tex. App.—Fort Worth 2009, pet. denied) ("[I]f private property is taken for a purely private purpose, Section 17 is violated." (quoting Tex. Const. art. I § 17, interpretative commentary)). Although district courts typically are courts of general jurisdiction, the Legislature has vested exclusive jurisdiction over inverse condemnation claims in the Harris County Courts at Law. Tex. Gov't Code Ann. § 25.1032(c) (West Supp. 2015); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 672 n.5 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Kerr v. Harris Cty.*, 177 S.W.3d 290, 294 (Tex. App.—Houston [1st Dist.]

16

2005, no pet.); *City of Houston v. Boyle*, 148 S.W.3d 171, 179 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The trial court, therefore, did not have jurisdiction over Sumner's takings claim and should have granted appellees' plea to the jurisdiction. We overrule Sumner's fourth issue and the parts of his fifth and sixth issues addressing his takings claim.

An appellate court's jurisdiction over the merits of a case extends no further than that of the court from which the appeal was taken. *Kerr*, 177 S.W.3d at 295. If the trial court lacked jurisdiction, then the appellate court has jurisdiction only to vacate the judgment or order and dismiss the appeal. *Id.* Because the trial court did not have jurisdiction, we vacate the portion of the trial court's summary judgment addressing Sumner's takings claim and its order denying appellees' plea to the jurisdiction as moot, and we dismiss Sumner's takings claims for lack of subject-matter jurisdiction. *Id.*

## IV.    The trial court did not err in granting appellees' motion for summary judgment on Sumner's remaining claims, except as to one claim that is not ripe.

Sumner alleged that Flores, acting in his official capacity, and the other appellees were liable for damages because they acted in concert with Prichard in her violation of section 11.086(b) of the Texas Water Code. *See* Tex. Water Code Ann. § 11.086(b).[4] Sumner also sought a declaration that Flores and the other appellees acted in concert with Prichard in her violation of section 11.086(b) of the Water Code. Finally, Sumner sought a declaration mandating that Flores take certain future actions, such as (1) notifying Sumner when Prichard submitted plans to correct the alleged problems with her property; and (2) allowing him a comment

---

[4] Section 11.086(b) of the Texas Water Code provides: "A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow."

17

period before Flores approved Prichard's new plan.

Appellees argued in their motion for summary judgment that governmental immunity bars these claims against Spring Valley and the Board of Adjustment because they involve the performance of governmental functions and immunity has not been waived.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (waiving immunity for property damage claims only if claim arises from the use of motor-driven vehicles or equipment); § 101.0215(29) (designating the performance of duties related to zoning, planning, and plat approval as governmental functions). They asserted that Sumner's claims against Flores are barred by immunity as well because they were against Flores in his official capacity as a Spring Valley employee.

The trial court granted appellees' motion for summary judgment based on immunity. The trial court also dismissed all claims against Flores. In his fifth and sixth issues, among other arguments already addressed above, Sumner asserts that the trial court should not have granted appellees' motion for summary judgment because he alleged ultra vires claims that could support both an award of damages and declaratory relief. We address Sumner's complaint here under the familiar summary judgment standard of review as stated in *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

Governmental immunity protects State agencies and political subdivisions, as well as officers and employees acting within their official capacity, from

---

[5] While appellees attempted to file a hybrid motion for summary judgment, we must review appellees' motion for summary judgment based on governmental immunity exclusively as a traditional motion for summary judgment. *See EPGT Tex. Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330, 335 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984)) (stating that when a governmental entity raises the affirmative defense of governmental immunity in a summary judgment motion, it must establish the affirmative defense as a matter of law).

lawsuits for damages unless immunity has been waived by the Legislature. *Texas Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 875 (Tex. App.—Houston [14th Dist.] 2015, pet. filed). Immunity generally deprives courts of subject-matter jurisdiction. *Id.* Governmental immunity does not, however, bar claims alleging that a governmental official acted ultra vires, or without legal authority, in carrying out his official duties. *Houston Belt & Terminal Ry. Co. v. City of Houston*, No. 14-0459, 2016 WL 1312910, at *1 (Tex. April 1, 2016). In that circumstance, governmental immunity does not apply from the outset. *Id.* at *1 n.1. Because an ultra vires suit is, for all practical purposes, a suit against the governmental entity, relief is limited. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 374 (Tex. 2009). Therefore, a plaintiff alleging an ultra vires claim cannot recover retrospective monetary relief, but is instead limited to prospective declaratory and injunctive relief. *Lazarides*, 367 S.W.3d at 800.

We turn first to Sumner's argument that immunity does not apply because he alleged ultra vires claims against the governmental entities, Spring Valley and the Board of Adjustment. An ultra vires claim cannot be asserted against a governmental entity but must instead be brought against a government official or employee of a governmental entity. *See Heinrich*, 284 S.W.3d at 372–73. We therefore hold that Sumner has not alleged an ultra vires claim and that governmental immunity protects the governmental entities, Spring Valley and the Board of Adjustment, from Sumner's alleged ultra vires claims. *Houston Belt & Terminal Ry. Co.*, 2016 WL 1312910, at *1.

We next examine Sumner's cause of action alleging that Flores acted in concert with Prichard to violate the Texas Water Code entitling him to the recovery of monetary damages. We conclude that Sumner has not alleged a proper ultra vires claim here because he seeks to recover monetary damages. *Lazarides*, 367

S.W.3d at 800 (stating that the only remedies available in an ultra vires suit are prospective declaratory and injunctive relief). The result is the same for Sumner's request for a declaration that Flores acted in concert with Prichard to violate the Texas Water Code because the real substance of that request for declaratory relief is a suit to recover for damage allegedly caused to his property. *See Tex. Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 391–92 (Tex. 2011) (examining petition, including relief sought, to determine real substance of plaintiff's cause of action asserted claim barred by sovereign immunity); *Heinrich*, 284 S.W.3d at 371 (stating that plaintiff cannot avoid governmental immunity by rephrasing claim as a declaratory judgment action); *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (stating private parties cannot circumvent governmental immunity by characterizing suit for money damages as declaratory judgment action).

Finally, we address Sumner's cause of action seeking a declaration mandating that Flores take certain actions in the future.[6] An ultra vires suit alleges "that a government officer *acted* ultra vires, or without legal authority, in carrying out his duties." *Houston Belt & Terminal Ry. Co.*, 2016 WL 1312910, at *1 (emphasis added). In this cause of action, Sumner does not complain of a past action performed by Flores, but instead seeks to control his future actions as the Spring Valley Building Official in the event that Prichard submits another plan for

---

[6] In his third amended petition, Sumner states this claim as follows:

Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, [Sumner] asks the Court to issue a judgment declaring that a) PRICHARD must submit to [Flores's] office a written plan including drawings to remedy the violations within 30 days of the day judgment is rendered in this cause, b) [Flores] must notify [Sumner] when he receives the plan and allow at least ten days for [Sumner] to review and comment on the plan before approving it and c) that such comment or failure to comment does not affect [Sumner's] right to an outcome that fully complies with [Spring Valley's Drain Regulations], the WATER CODE § 11.086(a) and other State [and] CITY laws or obligations relating to landscaping or drainage that have an impact on [Sumner] or [Sumner's] PROPERTY.

20

approval. This claim therefore presents a ripeness issue.

Ripeness is a component of subject-matter jurisdiction. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). As such, ripeness is a legal issue that a court may raise sua sponte. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The ripeness inquiry focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated, or may not occur at all. *Lazarides*, 367 S.W.3d at 801–02. A case is not ripe when the question whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or on events that have not yet come to pass. *Gibson*, 22 S.W.3d at 852. To allow adjudication of a claim that is not ripe would be the essence of an advisory opinion. *Lazarides*, 367 S.W.3d at 802. Because Sumner's claim here depends on future events that may or may not occur, we hold it is not ripe and the trial court did not have jurisdiction over it.[7] *City of Anson v. Harper*, 216 S.W.3d 384, 395 (Tex. App.—Eastland 2006, no pet.); *Gibson*, 22 S.W.3d at 852.

We overrule the parts of Sumner's fifth and sixth issues addressing his ultra vires claims. Because the trial court did not have jurisdiction over the portion of Sumner's ultra vires claim regarding possible future actions by Flores, we vacate the portion of the trial court's summary judgment addressing that claim, and we dismiss the claim for lack of subject-matter jurisdiction.

## CONCLUSION

Having concluded that the trial court did not have subject-matter jurisdiction over Sumner's takings claim or his ultra vires claim regarding possible future actions by Flores, we vacate the trial court's order denying appellees' plea to the

---

[7] In his third amended petition, Sumner also sought a declaration that Flores discriminated against him as a class of one. Because Sumner does not address this claim in his appellate brief, we conclude that he has waived any complaint he may have had due to inadequate briefing. Tex. R. App. P. 38.1(i).

jurisdiction as moot and render judgment dismissing those claims for lack of subject-matter jurisdiction. Having overruled Sumner's issues on appeal, we affirm the remainder of the trial court's judgment.

/s/    J. Brett Busby
         Justice

Panel consists of Justices Boyce, Busby, and Brown.